## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| **RICHARD PUNDT, an Individual,** | |
| **Plaintiff,** | **No. C10-0159** |
| **vs.** | **RULING ON MOTION TO COMPEL** |
| **SELECT PORTFOLIO SERVICING, INC., a Corporation; TRANS UNION CORP, a corporation; and DOES 1-20, Inclusive,** | |
| **Defendants.** | |

---

This matter comes before the Court on the Motion to Compel Deposition Responses and for Fees Pursuant to Rule 37 (docket number 36) filed by Defendant Select Portfolio Servicing, Inc. on November 23, 2011; the Memorandum of Law in Opposition (docket number 39) filed by the Plaintiff on December 7, 2011; and the Reply Brief (docket number 41) filed on December 9, 2011.  Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

### I. PROCEDURAL HISTORY

On December 17, 2010, Plaintiff Richard Pundt filed a complaint seeking damages against Defendants Select Portfolio Servicing, Inc. ("Select"), Trans Union Corp. ("Trans Union"), and "Does 1-20."  Pundt claims that Defendants falsely reported information on a real property loan, in violation of the Fair Credit Reporting Act.  Trans Union filed an answer and affirmative defenses on January 12, 2011.  On February 2, 2011, Select filed an answer and affirmative defenses.

On April 18, 2011, the Court adopted a Scheduling Order and Discovery Plan submitted by the parties.  The trial ready date is May 12, 2012.

## II. RELEVANT FACTS

As part of its discovery efforts, Trans Union served interrogatories to be answered by Pundt. Among other things, Pundt was asked to identify "all injuries and/or damages you claim to have suffered in this lawsuit." After stating certain standard objections, Pundt responded as follows:

> Plaintiff is not claiming physical injuries but is claiming emotional distress damages. The Plaintiff did experience significant emotional distress as a result of the wrongful, inaccurate, incorrect and purposefully misleading information that SPS (Select Portfolio Servicing) provided to Trans Union and which Trans Union failed to remove after the Plaintiff provided detailed and accurate information and proof that the information supplied by SPS was wrong, inaccurate, incorrect and purposefully misleading. The symptoms included sleepless nights, digestive problems, constant worry and other distress since financial institutions and other entities refused to refinance the Plaintiff's residence due to the wrongful, inaccurate, incorrect and purposefully misleading information that SPS provided and which Trans Union refused to remove. No professional health care providers were consulted.

Pundt's Response to Trans Union's Interrogatory No. 10 (docket number 36-2 at 5).

Pundt's deposition was taken by Defendants' counsel on November 9, 2011. When asked whether he was "suffering any other stress in your life" during the relevant time period, Pundt responded: "I'm sure I was, yes."[1] Pundt testified that "there are lots of stressors," including the 2008 flood and "other matters going on in my life that were stressful as well."[2] When questioned further, however, Pundt refused to identify the "other matters" which were stressors in his life at that time.

---

[1] See Deposition of Richard Pundt, 275:23-276:3 (docket number 36-3 at 4-5).

[2] Id. 276:4-8 (docket number 36-3 at 5).

2

Later in his deposition, when asked about damages suffered in this case, Pundt included "significant emotional distress that has resulted."[3] Pundt was asked whether he would "answer any questions about other emotional stressors that you've had in the last five years." Pundt responded that "I'd prefer not to."[4] Pundt's counsel then told Select's counsel that he was "instructing the witness not to answer any questions about other emotional distress," citing privacy, relevance, and prejudice.[5]

### III.  DISCUSSION

In its instant motion to compel, Select asks that Pundt be required to respond to questions regarding other possible causes for Pundt's emotional distress, and that Select be reimbursed for its costs relating to the motion to compel and the "reconvened" deposition. Pundt argues that notwithstanding his claim for damages relating to emotional distress, he cannot be compelled to answer questions regarding other possible sources for that distress, due to his "right to privacy."

### A.  Compelling Deposition Responses

### 1.     Relevance and Prejudice

In his resistance, Pundt no longer cites "relevance" or "prejudice" as reasons why he should not be required to answer questions regarding other possible sources for his emotional distress. To the extent that Pundt has not abandoned these arguments, the Court finds that they are without merit. The FEDERAL RULES OF CIVIL PROCEDURE authorize the Court to "order discovery of any matter relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1). In a discovery context, relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund,*

---

[3] *Id.* 320:22-321:1 (docket number 36-3 at 6).

[4] *Id.* 321:6-322:5 (docket number 36-3 at 6).

[5] *Id.* 322:70323:13 (docket number 36-3 at 6).

*Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Davis v. Union Pacific R.R. Co.*, 2008 WL 3992761 (E.D. Ark. 2008) at *2 ("A request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."); *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (same).

Here, Pundt claims that he suffered emotional distress as a result of Defendants' wrongdoing. Specifically, Pundt asserts that he suffered "sleepless nights, digestive problems, constant worry and other distress." At his deposition, Pundt conceded that there were "other matters going on in my life that were stressful as well." A jury may conclude that his sleeplessness, stomach problems, or "constant worry" may be attributable, at least in part, to those other stressors. Pundt refuses, however, to disclose what those "other matters going on in my life" may have been, thereby preventing a jury from making that determination.

In his "declaration" filed in opposition to the instant motion, Pundt acknowledges that "I had emotional distress over the last several years both from my ongoing situation with SPS but also from other sources related to my personal life and affairs."[6] According to Pundt, the "non-SPS matters" are being "resolved separately" and he is "not claiming any emotional distress from matters outside of the emotional distress caused by Select Portfolios Servicing (SPS)."[7] In his brief, Pundt asserts that he "is able to identify, separate and testify to the specific emotional distress that he suffered as a consequence of his dealings with SPS and Transunion."[8] That is, Pundt apparently believes that he can attribute a sleepless night to his dealings with Select, to the exclusion of other causes. Similarly, Pundt will apparently testify that a digestive problem is attributable to this case,

---

[6] *See* Declaration of Richard Pundt (docket number 39-2) at 2.

[7] *Id.*

[8] *See* Pundt's Memorandum of Law (docket number 39) at 5.

to the exclusion of any other possible stressors. The Court concludes that the jury must make these determinations. Accordingly, any argument that other possible sources of Pundt's emotional distress are not relevant to this case is meritless.

This result is supported by the cases cited in Select's brief. In *Cotton v. AT&T Operations, Inc.*, 2007 WL 465625 (E.D. Mo. 2007), the plaintiff "put her medical history at issue by seeking damages for emotional distress in her complaint." *Id.* at *2. The defendant subpoenaed the plaintiff's medical records to determine whether the plaintiff's past medical history contributed to her emotional distress. The Court denied the plaintiff's motion to quash, concluding that the defendant "is entitled to discovery related to the potential cause of such emotional distress." *Id.* Similarly, Pundt has made a claim for emotional distress. The Court believes that Defendants are entitled to discovery relating to "the potential cause of such emotional distress."

In *Walker v. Northwest Airlines Corp.*, 2002 WL 32539635 (D. Minn. 2002), the plaintiff claimed emotional distress damages in an employment discrimination case. The defendant sought the plaintiff's medical records to determine whether "his alleged emotional distress was caused at least in part by events and circumstances unrelated to the alleged employment discrimination." *Id.* at *3. After a thorough discussion of the issues, including the plaintiff's "blanket statements about invasions of privacy," the Court found that the information was discoverable. *Id.* at *4. *See also Young v. Dornan*, 2008 WL 4372819 (D. Neb. 2008) (holding that because the plaintiff alleged emotional distress damages, he waived the psychotherapist-patient privilege, and was required to answer questions on that subject at his deposition).

### 2.   *Right to Privacy*

In his resistance to the instant motion, Pundt claims that the issue here is his "right to privacy." After stating that "there is a paucity of federal authority directly addressing the privacy protection in discovery," Pundt rests his argument on a decision by the

California Court of Appeal, Second Appellate District, Division Four, and a case from the United States District Court in the Southern District of Ohio.

In *Tylo v. Spelling Entertainment Group, Inc.*, 55 Cal. App. 4th 1379 (Cal. App. 1997), the plaintiff signed a contract to appear in the television series "Melrose Place." One month later, the plaintiff learned that she was pregnant, and the contract was terminated. The plaintiff sued, alleging, among other things, severe emotional distress. At her deposition, the defendant's attorney sought to ask questions regarding other possible stressors, including problems in the plaintiff's marriage. The trial court ordered the plaintiff to answer questions concerning emotional distress related to her marital relationship. The plaintiff appealed, asserting a constitutional right to privacy contained within article I, section 1 of the California Constitution. *Id.* at 1387. The Appellate Court noted that "[w]hen the right to discovery conflicts with a privileged right, the court is required to carefully balance the right of privacy with the need for discovery." *Id.* In doing that balancing in *Tylo*, the Court concluded that the defendant was not entitled to inquire regarding the plaintiff's marital difficulties. As noted by Select, *Tylo* is distinguishable from the instant action because it is based on protections found in the California Constitution. In addition, the Court finds the holding in *Tylo* to be unpersuasive. If a plaintiff claims that he or she is suffering from emotional distress, and admits that multiple stressors existed in their life at that time, they cannot simply place their emotional distress at the feet of the defendant and say "take my word for it." In any event, the Court is unable to perform the sort of "balancing" described in *Tylo*, since Pundt is unwilling to identify the "other matters" causing stress in his life. Not all other stressors carry the same "right to privacy" as information regarding one's marriage.

Pundt also cites *Mann v. University of Cincinnati*, 152 F.R.D. 119 (S.D. Ohio 1993). There, the defendants obtained medical records without giving appropriate prior notice to the plaintiff. After a lengthy discussion regarding the procedure followed to obtain the records, the Court concluded that "[n]one of the aforementioned records are

discoverable, because they have virtually no relevance to the issues in this case and the privacy interest in them is great." *Id.* at 125. As discussed above, however, the Court believes that the questions posed to Pundt at his deposition are relevant to the damages identified by Pundt in his answers to interrogatories. Moreover, the Court in *Mann* noted that the "right to privacy" which attaches to medical records is "not absolute." *Id.* at 126. The Court suggested that the plaintiff was entitled to an *in camera* review of the records prior to disclosure, "to determine if the necessity for disclosure outweighed the Plaintiff's right to privacy in those most personal of documents."

Turning back to the facts in the instant action, Defendants are not seeking copies of any of Pundt's medical records. In his declaration filed in opposition to the instant motion, Pundt states that he has not incurred "any medical, pharmaceutical or psychological treatment for any emotional distress and I am not making any claim for medical treatment relative to same."[9] Instead, Defendants seek to follow up on Pundt's claims that he suffered sleepless nights, digestive problems, constant worry and other distress as a consequence of his dealings with Defendants. Pundt admits that he suffered from other stressors in his life at that time, and it is reasonable for Defendants to discover whether those stressors may have caused or contributed to Pundt's condition. Accordingly, the Court finds that Pundt is required to answer questions regarding other possible sources for the emotional distress which he is claiming in this case.

### B. Imposition of Costs and Fees

Next, Select asks that it be granted attorney fees and other costs associated with the motion to compel and the reconvened deposition. Select argues that Plaintiff's counsel improperly instructed Pundt not to answer the questions, in violation of FED. R. CIV. P. 30(c)(2). Generally, objections at a deposition are noted on the record,

---

[9] *See* Declaration of Richard Pundt (docket number 39-2) at 3. The declaration is silent regarding whether Pundt has ever been treated or medicated for emotional distress in the past.

but the examination still proceeds and the testimony is taken subject to any objection. FED. R. CIV. P. 30(c)(2). A person may instruct a deponent not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the Court, or to present a motion under RULE 30(d)(3)."[10]

Here, there were no "limitations" ordered by the Court, and Pundt did not file a motion under RULE 30(d)(3). In fact, Pundt concedes in his resistance that Defendants' questioning was not conducted in "bad faith" and, therefore, instructing the witness not to answer on those grounds (with an accompanying RULE 30(d)(3) motion) was not justified. Instead, Pundt asserts that he "was instructed not to answer because there was a constitutionally protected right to privacy in issue."[11] Apparently, Pundt argues that the reference to "privilege" found in RULE 30(c)(2) includes the "right to privacy." He offers no authority for this argument.

The Court concludes that none of the reasons authorized by the RULES for instructing a deponent not to answer a question existed here.[12] The Court may impose an appropriate sanction, including expenses and attorney fees, on a person who "impedes, delays, or frustrates the fair examination of the deponent." RULE 30(d)(2). If a motion to compel is granted, the Court must require the party whose conduct necessitated the motion "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." RULE 37(a)(5)(A). The Court must not order payment, however, if the other party's objection was "substantially justified" or "other circumstances make an award of expenses unjust." *Id.*

---

[10] It should be noted that an objection based on relevance of "prejudice" will not justify a witness being instructed not to answer.

[11] *See* Pundt's Resistance (docket number 39) at 6.

[12] Even if Pundt's attorney believed that the questions were unreasonably annoying or embarrassing, his remedy was to suspend the deposition and present a motion for relief under RULE 30(d)(3).

Pundt's counsel argues that his objections at the deposition were substantially justified.  Apparently, Pundt's counsel practices primarily in California and he was familiar with the *Tylo* case.  In fact, he referenced the case at the deposition.  While an attorney practicing in this district is chargeable with knowledge of the law in this district, the position taken by Pundt at the deposition is somewhat understandable.  The cases cited by Select address specifically the production of medical records and the waiver of a psychotherapist-patient privilege.  After considering all of the facts and circumstances, the Court concludes that an award of expenses would be unjust.  The Court declines to order attorney fees and costs, or the costs associated with the reconvened deposition.

### ORDER

IT IS THEREFORE ORDERED that the Motion to Compel (docket number 36) filed by Select on November 23, 2011 is **GRANTED** in part and **OVERRULED** in part as follows:

1.    Pundt must submit to a further deposition for the limited purpose of asking questions regarding other matters going on in his life which may have contributed to his claims of emotional distress.

2.    Pundt is not required to pay Select for the costs associated with this motion or the reconvened deposition.

DATED this 20th day of December, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA